741 So.2d 34 (1999)
Angela M. THIBODEAUX, et al., PlaintiffsAppellants,
v.
FERRELLGAS, INC., et al., DefendantsAppellees.
No. 98-862.
Court of Appeal of Louisiana, Third Circuit.
January 6, 1999.
Writ Denied March 26, 1999.
*35 John Wheadon deGravelles and J.B. Jones, Jr., Cameron, for Angela M. Thibodeaux, et al.
Michael J. Remondet, Jr., G. Andrew Veazey, Lafayette, Michael C. McMullen, Kansas City, MO, for Ferrellgas, Inc., et al.
Ronald Adams Johnson, Baton Rouge, for Yorkshire Ins., et al.
Henry LeBas, Lafayette, for Webstone & Goddard.
Robin A. Anderson, Lake Charles, for National Union.
John Foster DeRosier, Lake Charles, Winfred Thomas Barrett, III, and Edgar Dean Gankendorff, Lafayette, for Lawrence Lanclos.
John Edmund McElligott, Jr., Lafayette, and Steven G. Emerson, Kansas City, MO, for Empiregas, Inc.
Lawrence J. Duplass, Metairie, for American Auto Ins.
Allen L. Smith, Jr., Lake Charles, for TIG Ins. Co.
D. Keith Wall, Jennings, Robert Thomas Jacques, Jr., Lake Charles, and Michael Lea Hyman, Baton Rouge, for Continental Gas, Inc.
Rick J. Norman, Lake Charles, Godfrey Bruce Parkerson, W. Gerald Gaudet, Lafayette, and George Bartlett Hall, Jr., New Orleans, for First Specialty Ins.
Before COOKS, SAUNDERS and WOODARD, Judges.
WOODARD, Judge.
This is a personal injury case. Angela M. Thibodeaux, Michael A. Bonin, Brent M. Benoit, Jeffery W. Kebodeaux, William J. Britt, and John Perez, plaintiffs, suffered severe burn injuries on August 12, 1995 in an explosion and fire in the rental cabin in which they were staying at Holly Beach, Louisiana. Propane gas caused the explosion and fire. It leaked from an open, uncapped gas line which ignited from an unknown source. The plaintiffs filed suit against Lawrence Lanclos (Lanclos), the rental cabin owner, Ferrellgas, Inc., (Ferrellgas), the company which supplied propane gas to the cabin for the six-year period preceding the accident, and Ferrellgas' insurer, TIG Insurance Company (TIG). In June of 1996, the plaintiffs, Ferrellgas and TIG, entered into an $18,000,000.00 "Mary Carter" settlement agreement. In part, the terms of the settlement required that the plaintiffs recompense Ferrellgas and TIG by suing Empiregas, Inc., of Lake Charles (EGLC). The plaintiffs sued EGLC, its parent company, *36 Empire Gas Corporation (EGC), and Empiregas, Inc., of Lake Providence (EGLP), Empiregas, Inc., of Eunice (EGE), and Empiregas, Inc., of Louisiana EGLA). On May 23, 1997, all of the Empire Gas defendants filed motions for summary judgment on various grounds, which the trial court granted on January 8, 1998 and signed on January 23, 1998. That same day, some of the plaintiffs filed a motion for a new trial. The remaining plaintiffs filed a similar motion on January 30, 1998, as did Ferrellgas. Following a hearing on March 25, 1998, the trial court denied the motions for a new trial. All of the plaintiffs now appeal that ruling.
We reverse in part and affirm in part.

FACTS
At all times relevant to this case, Lanclos owned rental property at Holly Beach, Louisiana, consisting of ten rental cabins. He had acquired the property in July of 1986. All of the cabins were serviced by a single red propane gas tank. On July 16, 1986, at the request of Lanclos, EGLC serviced the tank for the first time. Thereafter, it made sales to this same tank on November 12, 1986, December 15, 1986, January 12, 1987, February 24, 1987, May 19, 1987, June 25, 1987, September 14, 1987, November 6, 1987, and December 11, 1987. It did not own, sell, lease, or install the red tank. On May 12, 1989, Ferrellgas took over the account and was the servicing dealer until the explosion and fire on August 8, 1995.
Shortly before dawn on August 8, 1995, a propane gas explosion and fire occurred in Cabin R-6. In the cabin were six sleeping young adults, Angela M. Thibodeaux, William John Britt, John Perez, Brent M. Benoit, Jeffery W. Kebodeaux, and Michael Bonin. They had all traveled from their homes in Jennings, Louisiana to attend the annual Cajun Riviera Festival. Each suffered serious burns.
An investigation to determine the cause of the fire found an open, uncapped propane gas valve on the south wall near the entry door. The wall around the valve was scorched from intense heat. The investigation revealed that the propane gas had escaped from the tank outside the cabin through the uncapped valve in the cabin and had been ignited by an unknown source, resulting in the explosion and fire. None of the occupants of the cabin remembered smelling gas or seeing the uncapped gas valve before the fire.
When the accident occurred, propane was being supplied to cabin R-6 from a silver tank, which Lanclos had personally installed in March of 1995. Ferrellgas supplied all of the propane in the new silver tank from the time it was installed until the fire with its last delivery before the fire on August 1, 1995.
Lanclos testified in three depositions that when EGLC delivered gas to cabin R-6 in 1986-87, the gas line in cabin R-6 was not open or uncapped because a space heater was attached to the gas line. He testified that he removed the space heater in the cabin sometime in February 1988. This was several months or more after EGLC had last serviced the cabin in December 1987. Later in these proceedings, after consultation with one of the plaintiffs' attorneys, Mr. J.B. Jones, Lanclos signed an affidavit, stating that he had removed the heater in cabin R-6 in the summer or fall of 1987. This affidavit was untimely submitted for filing into evidence.
Each of the persons injured in the explosion and fire filed separate suits in the 38th Judicial District Court against Ferrellgas, Inc., and Lanclos. The cases were later consolidated. The plaintiffs then added TIG and other Ferrellgas, Inc., excess insurers and Ferrellgas employee, Paul R. Deshotel. The plaintiffs later added Webstone Company, Inc., (Webstone), alleging a products liability claim, as it allegedly manufactured the uncapped gas valve in cabin R-6.
In June of 1996, the plaintiffs, Ferrellgas, Inc., and TIG entered into an $18,000,000.00 "Mary Carter" settlement *37 agreement, requiring the plaintiffs to reimburse Ferrellgas and TIG for settlement funds by suing Ferrellgas, Inc.'s, competitor, EGLC. The plaintiffs then sued EGC, the parent corporation, and three additional subsidiaries, EGLP, EGE, and EGLA. The parent corporation and the additional subsidiaries had never had any direct contact with Lanclos or his cabins.
The Empire Gas defendants answered and filed a third party demand against Ferrellgas, Paul Deshotel, and Lanclos. The plaintiffs then joined National Union Fire Insurance Company of Pittsburgh, Pennsylvania and the Institute of London Companies as insurers of Empire Gas. Finally the plaintiffs joined United States Fire Insurance Company and North River Insurance Company as insurers of Webstone. Webstone was dismissed on a motion for summary judgment, but the appeal from this decision is not before us in this matter.

ASSIGNMENTS OF ERROR
Angela M. Thibodeaux, Melvin Thibodeaux, and Mildred Thibodeaux allege that the trial court erred:
1. In granting summary judgment in favor of Empiregas, Inc., of Lake Charles and Empire Gas Corporation, its parent company, and in denying plaintiffs' motion for new trial on said summary judgment motion when:
A. These defendants were the first entity who delivered propane gas to Lawrence Lanclos' 10-unit beach cabin facility, when their negligence was a proximate cause of the accident giving rise to this litigation, since under their own rules and regulations, Empiregas employees had an obligation to educate and warn their customers about the safe use of propane gas systems, including but not limited to the necessity of capping valves and/or pipes in the system, and/or had a legal duty to do so under the Louisiana Liquid Petroleum Gas Commission regulations, because even if space heaters had been in place at the time Empiregas was servicing Lawrence Lanclos' propane gas system (which plaintiffs deny), had Lanclos been properly educated and warned by Empiregas concerning the necessity to cap valves and/or pipes when space heaters were removed from Lanclos' propane gas system, the accident sued on would not have occurred; and
B. A review of the records produced by the deposition of Lawrence Lanclos, dated December 20, 1996, in response to a request for production by the Empiregas defendants themselves reveals that, while the cabin involved in this accident Cabin R-6was rented during September 1987, but was not rented again in the winter of 1987 and also was not rented at all from the winter of 1988 through the winter of 1994, and thus the inference to be drawn from these records is that Cabin R-6 was not rented because that cabin had no heater after September 1987 and continuing through the winter of 1994.
2. By evaluating the credibility of a witness on consideration of summary judgment by choosing to disregard his affidavit, when the evaluation of the credibility of witnesses is inappropriate and incorrect under the law as it applies to consideration of issues raised by motion for summary judgment, and in failing to grant plaintiffs' motion for new trial on this ground.
3. By implying or hinting that the basis upon which the trial court decided to disregard the second affidavit of Lawrence Lanclos was possible untoward conduct on the part of counsel for plaintiffs Bonin, Benoit, Kebodeaux, Britt, and Perez (which the Thibodeaux plaintiffs deny), and by penalizing the Thibodeaux plaintiffs for the other plaintiffs' counsel's possible untoward *38 conduct, when the Thibodeaux plaintiffs are represented by separate counsel, and the conduct of the other plaintiffs' counsel should not be attributable to the Thibodeaux plaintiffs or their counsel, requiring the reversal of summary judgment at least as to the Thibodeaux plaintiffs. The trial court also erred by failing to grant plaintiffs' motion for new trial on this issue.
4. As a matter of law by dismissing the parent company, Empire Gas Corporation, from this lawsuit, and in failing to grant plaintiffs' motion for new trial on this ground, when there is evidence in this record demonstrating that it, as the parent of corporation of Empiregas, Inc., of Lake Charles, organized, controlled, and conducted the affairs of the latter so as to make the latter a mere instrumentality or adjunct of the former, and when the Empiregas subsidiaries are organized as separate corporations for tax purposes only, and when Empire Gas Corporation hired the manager of Empiregas, Inc., of Lake Charles.
William John (Billy), Clarence W., and Salley Britt; Michael A. Bonin, individually, and as the father of Christopher Leger; Jeffery W., Willred W., and Loyce Kebodeaux; John, Joseph Stephen, Jr., and Alice Mae Perez; and Brent Michael, Herman R., and Clara Benoit, appearing as tutor of the minor, Ashley Shay Benoit, allege that the trial court erred in granting the summary judgment, dismissing their claims, against Empire Gas Corporation:
1. Who first delivered propane gas to a 10-unit beach cabin facility, questioning whether this exposed them for liability on Empiregas under a negligence per se and/or duty/risk analysis; and
2. Should the separate entity concept be disregarded here because the subsidiary was organized and controlled and its affairs conducted so as to make it merely an instrumentality or adjunct of the parent company.

LAW

MOTION FOR SUMMARY JUDGMENT
Appellate courts are required to review summary judgments de novo under the same criteria that governed the trial court's consideration of whether or not summary judgment was appropriate. Schroeder v. Board of Sup'rs, 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979.
The appellants allege that the trial court erred in granting a summary judgment to the Empire Gas defendants. The law of summary judgment implemented in La.Code Civ.P. art. 966 was amended by Act No. 9 of the First Extraordinary Session of 1996. Further, in 1997, the legislature amended La.Code Civ.P. art. 966 to overrule, legislatively, jurisprudence inconsistent with Hayes v. Autin, 96-287 (La. App. 3 Cir. 12/26/96); 685 So.2d 691. In Hayes, we found that the legislature overruled the presumption against the grant of summary judgment. We stated that the amendment "leveled the playing field," by removing the overriding presumption in favor of a trial on the merits, and by scrutinizing, equally, the supporting documents submitted by the mover and nonmover.
La.Code Civ.P. art. 966 now provides, in pertinent part, that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish those ends." In other words, summary judgment shall be applied liberally. Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
The amended versions of La.Code Civ.P. art. 966 are procedural in nature and, thus, subject to retroactive, as well as prospective, *39 application. Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498.
Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).
La.Code Civ.P. art. 966, as amended, charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains at stake. Such burden is not unlike that assigned to the moving party before the amendments. Townley, 702 So.2d 323. Once the mover makes a prima facie showing that there is no genuine issue as to a material fact and that summary judgment should be granted, the burden shifts to the non-mover.
However, the amendments to La.Code Civ.P. art. 966 heightened the non-mover's burden to rebut the showing made by the mover of the non-existence of a genuine issue of material fact. Townley, 702 So.2d 323. The non-mover must sufficiently establish the existence of an essential element of his claim on which he is to bear the burden of proving at trial. Id. Furthermore, La.Code Civ.P. art. 967 provides in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains. Kumpe, 701 So.2d 498. We must next determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment. Id. Thus, summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts. Id. Facts are material if they determine the outcome of the legal dispute. Soileau, 702 So.2d 818. The determination of the materiality of a particular fact must be made in light of the relevant substantive law. Id.
After consideration of the entire record and the arguments of counsel, there are two issues we shall discuss in this opinion: the Lanclos affidavit and its relationship to the summary judgment, and the grant of summary judgment in favor of EGC. It is unnecessary to discuss the remaining issues.

THE AFFIDAVIT AND THE EXISTENCE OF A MATERIAL FACT IN DISPUTE
We note that counsel for William J., Clarence, and Sally Britt; Michael A. Boin, individually, and as the father of Christropher Leger; Jeffery W., Wilfred W., and Loyce Kebodeaux; John, Joseph Stephen, Jr., and Alice Mae Perez; and Brent M., Herman R., and Clara Benoit appearing as tutor of the minor Ashely Shay Benoit, did not assign as error the trial court's decision to disregard their late filed Lanclos affidavit, and their brief contains no argument or citation of authority to support such a contention. However, counsel for Angela M., Melvin, and Mildred Thibodeaux, who did not secure or file the affidavit in the record, did raise this issue as an assignment of error.
The question we have before us is whether, in these consolidated cases, we should render two different decisions regarding the plaintiffs because of one counsel's failure to assign as error the trial court's exercise of its discretion to disregard a critical affidavit in this litigation. Pursuant to our rules, if these cases were not consolidated, this fact would require us *40 to consider this issue abandoned as to these plaintiffs. Uniform Rules-Courts of Appeal Rule 2-12.4. However, because there is only one appeal number assigned to both sets of plaintiffs, the case arises out of a common pattern of facts and law, and the proof of liability concerning one plaintiff will be exactly the same for any other plaintiff, all of the plaintiffs' cases are far too integrated to reasonably do anything but consider any issue raised by either plaintiffs' counsel as being applicable to all of the plaintiffs.
The primary basis for the plaintiffs' assertion of liability against the defendants is the alleged presence of the uncapped line in Cabin R-6 at the time of the accident, a situation which allegedly existed at the time of Empire Gas' service. On the other hand, the Empire Gas defendants maintain that, as a matter of law, its service to Lanclos in 1986 and 1987 could not have been a legal cause of the accident which occurred in this case in 1995.
In the trial court's reasons for judgment in granting the motion for summary judgment, it stated:
It is thus this court's conclusion that if any liability rests with Empiregas, it must be based upon a finding that, at the time that Empiregas was the servicing dealer to Lanclos' Cabin R-6, no space heater was attached to the line and that this dangerous condition, being a legal cause of the accident, existed from then, up until the time of the accident. With that, I will review the evidence on that point.
UNDISPUTED FACTS
1. Lawrence Lanclos was the owner of rent cabins in Holly Beach, Louisiana and before 1987, the supplier of propane gas to his cabins was Empiregas, Inc. of Lake Charles. The cabin designated as R-6 was serviced by a 250 gallon propane tank, sometimes called the "red tank," which bore Serial No. 49379. The last delivery which Empiregas made to the red tank was in December, 1987.
2. The servicing dealer after Empiregas was Ferrellgas which provided exclusive propane deliveries to the red tank until it was replaced.
3. In 1994, Lanclos purchased another tank, installed it and connected it to the supply line for Cabin R-6. This tank bears Serial No. 99409 and is sometimes referred to as the "silver colored tank." Empiregas never supplied any propane to the silver-colored tank.
4. Sometime prior to the accident, Lanclos removed the space heater attached to the propane gas line in Cabin R-6 but did not cap the line and only a manually-operated valve blocked the release of gas.
In order for there to be a question-of-fact linking Empiregas to the accident, the evidence must be able to support the proposition that the gas line running from the red tank into Cabin R-6 in 1987 (and later from the silver-colored tank) was in the same dangerous condition (uncapped with no appliance) that it was on the day of the accident in 1995.
. . . .
At the time of the hearing on the motion for summary judgment, defendants had carried their burden by presenting a prima facie case that the only evidence on the decisive time element regarding the removal of the gas heater from Cabin R-6 was in the testimony of Lawrence Lanclos and that this evidence could not support the proposition that the event occurred before January 1988. The prima facie case shifted the burden to the plaintiffs to offer some evidence that would create a material issue on this critical fact.
This brings us to the issue involving the plaintiffs' untimely affidavit, which the trial court ultimately disregarded after permitting it to be filed into evidence and rendering summary judgment in favor of the defendants. The trial court opined that the affidavit, if considered, would have *41 created a genuine issue of material fact which would preclude summary judgment. After our de novo review of the record, we agree with this portion of the court's analysis. However, our inquiry does not stop here. It is necessary to review the procedural history of this affidavit to determine whether disregarding it and granting summary judgment were appropriate.
The trial court set the hearing date of the defendants' motions as July 30, 1997. This date was upset, and on August 13, 1997, all parties agreed at a hearing to forego argument and submit the matter for a decision on the briefs. The defendants were ordered to file their reply brief by August 18, 1997, and the plaintiffs were ordered to file theirs five days later. The defendants filed their brief on August 15, 1997. The plaintiffs did not file a response.
On September 10, 1997, another hearing was held. At that time, the plaintiffs offered a Lanclos affidavit, dated September 5, 1997. Over the objection of the defendants, the trial court in the instant case permitted the affidavit to be filed into the record, into evidence, and offered the defendants an opportunity to file a memorandum in opposition to the late filing, which they did on September 12, 1997.
In support of its decision to accept the late filing, the court stated in its Reasons for Judgment:
Although the Code of Procedure does not provide for any discretion on the late filing of affidavits, the court recognizes that some discretion has been recognized by the jurisprudence and each case must be decided on a case by case basis. White v. Gulf States Utilities, 465 So.2d 287 ([La.App.] 3rd Cir.1985). Unfortunately, the jurisprudence does not offer many guidelines on when a judge should exercise that discretion Kyles v. Sylvester, 654 So.2d 380 (La.App. 3rd Cir., 1995).
A review of this case shows that Mr. Lanclos was examined under oath and cross-examined thoroughly on three different occasions. His testimony touching on this critical point was given at times when the import of that feature of his testimony was not recognized and he had no reason to color his testimony. The change in testimony is not based, as Lanclos implies, on the discovery of new records but by curious logic, on the absence of records, a state of affairs which existed all along.
Other factors compel this court to view the affidavit with suspicion. This case has been characterized by compromises between opposing parties, shifting of alliances and subsequent changes in legal and factual positions by the parties. Lawrence Lanclos remains a defendant in this case and the internal language of the affidavit shows that his attorney and one of plaintiffs' attorneys have cooperated in producing the affidavit. In view of the bizarre history of this case, the court will not exercise its discretion to allow a late filing of the affidavit and the same will be disregarded.
First, we note that the trial court was correct that it had discretion concerning whether to admit a late filing. White v. Gulf States Utilities, 465 So.2d 287 (La. App. 3 Cir.1985). However, its decision to admit the affidavit into the record and afford the defendants an opportunity to respond to it was its exercise of that discretion. See generally, White, 465 So.2d 287; Brinkley v. Murrell Enters., Inc., 389 So.2d 435 (La.App. 2 Cir.1980); Johnson v. Ouachita Parish Police Jury, 353 So.2d 1114 (La.App. 2 Cir.1977). The trial court could have taken the affidavit under advisement while it considered memoranda from all parties and then determined whether to exercise its discretion and admit it. However, it did not do so, and once it permitted the affidavit to become part of the record for summary judgment purposes, it had to consider it, as do we in conducting our de novo review. La.Code Civ.P. art. 966(B); Soileau, 702 So.2d *42 818; Schroeder, 591 So.2d 342. La.Code Civ.P. art. 966(B) provides:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
(Emphasis added.)
In fact, the court's Reasons for Judgment made it clear that it did consider the affidavit but ultimately chose to afford it no weight because the affidavit seems to contradict Lanclos' earlier sworn testimony. Thus, the trial court based its decision on Lanclos' credibility. Our law does not permit a trial court to make such credibility determinations in ascertaining the existence of a material fact when deciding motions for summary judgment. See generally, Miramon v. Woods, 25,850 (La. App. 2 Cir. 6/4/94); 639 So.2d 353; Allain-Lebreton Co. v. Exxon Corp., 95-1576 (La. App. 1 Cir. 4/4/96); 694 So.2d 296. Such credibility decisions are to be left to the jury.
We are aware of the holdings of Douglas v. Hillhaven Rest Home, Inc., 97-0596 (La.App. 1 Cir. 4/8/98); 709 So.2d 1079, and LeBlanc v. Dynamic Offshore Contractors, 626 So.2d 16 (La.App. 1 Cir.1993) that unexplained material contradictions in an affidavit from previous deposition testimony should be a basis for a trial court to reject such an affidavit; however, we find that the apparent contradictions and Lanclos' explanations, herein, are arguable and best left to the jury.
When a late filing is accepted by the trial court, we are required to determine if it prejudiced the opposing party, which is the test for a trial court's consideration of late filed affidavits. White, 465 So.2d 287. In the case sub judice, we fail to see how the defendants were unfairly prejudiced since the court permitted the defendants an opportunity to respond to it and then took several months to decide the motions.
We find no legal or factual basis for the trial court to have disregarded the affidavit after it permitted it to be filed into the record for summary judgment purposes. Once it became part of the evidence, it revealed a material issue of fact in dispute, that fact being the date when Lanclos removed the space heater from unit R-6, which could determine whether the defendants share in the liability for plaintiffs' injuries. As such, this should have defeated summary judgment.
The trial court erred in granting summary judgment for the defendants. This portion of the trial court's decision is reversed. Because of our finding that there is a material fact in dispute, it is unnecessary for us to continue our summary judgment analysis and determine if the defendants were entitled to judgment as a matter of law.

THE POSSIBLE LIABILITY OF EMPIRE GAS CORPORATION
Initially, plaintiffs sued EGLC. Subsequently, they added its parent, EGC, and three other Louisiana subsidiaries, EGE, EGLP, and EGLA. The plaintiffs conceded that the three subsidiaries, EGE, EGLP, and EGLA, should not have been made part of this suit and were properly dismissed. Thus, this portion of the trial court's decision on the motion for summary judgment is affirmed.
Regarding the connection of EGC and EGLC, the trial court, in its reasons for summary judgment, stated:
CORPORATE IDENTITY
The particular company from which Lanclos purchased the propane and which serviced the Lanclos cabins before Ferrallgas took over, was Empiregas, Inc. of Lake Charles. In a wide sweep, the plaintiffs had included the parent company, Empiregas Corporation, and some associated subsidies-Empiregas, Inc. of Eunice; Empiregas, Inc. of Lake Providence and Empiregas, Inc. of Louisiana-as parties in the amended petition. *43 With the exception of the first named, none sold any propane to Mr. Lanclos or had any other business transactions with him.
A corporation is a distinct legal entity and neither shareholders, parent companies, nor other owners, are liable for the debts of the corporation except in the presence of exceptional circumstances. These circumstances, resulting from a failure to maintain the integrity of the corporation, may produce the so-called "piercing of the corporate veil", in which case, the corporate structure is not a shield to the vicarious liability to its owners. Some of the circumstances recognized by our jurisprudence are: comingling of funds, under-capitalization, irregularities, and fraud. Riggins vs. Dixie Shoring Company, Inc. 590 So.2d 1164 (La.1991). There has been no evidence of such circumstances here nor are they even suggested. Consequently, the first ruling of this court is that Empiregas Corporation; Empiregas, Inc. of Eunice; Empiregas, Inc. of Lake Providence; and Empiregas, Inc. of Louisiana; are granted summary judgment and dismissed from this action.
In support of its motion for summary judgment, on June 26, 1997, EGC and EGLC submitted the affidavit of Valeria Schall, which established that EGC and EGLC were separate corporate entities. Once EGC met its burden of establishing a lack of a genuine issue of material fact concerning the liability of EGC as a separate corporation, the burden then passed to the plaintiffs to present specific facts to create a dispute of material fact that would require a trial on this issue. However, the record already contained such evidence.
In support of the plaintiffs' motion for summary judgment, on June 11, 1997, they filed portions of the deposition of Paul Scott Lindsey, Jr., president, stockholder, and executive officer of EGC. The Empire Gas defendants also filed portions of Lindsey's deposition in the record on July 29, 1997. The Lindsey deposition is important evidence of the relationship of EGC to its subsidiary retail companies, such as EGLC. He testified that the reason the subsidiary retail companies of EGC, like EGLC, were originally set up as separate corporations was for tax purposes. All the subsidiaries were insured by insurance policies procured by EGC. It maintained the personal records of the retail company managers, hired and fired the managers of all its retail companies, supervised the performance of the retail companies that operated under its generic name, "Empire Gas," through a system of regional managers, and provided guidelines to the retail companies concerning their duties to the customers.
After a comprehensive review of the record, there is sufficient evidence in the record to create a genuine issue of material fact of exceptional circumstances, indicating that EGC and EGLC are a single business entity, in which a jury might hold EGC liable for the acts of its subsidiary, EGLC. Our law does recognize an exception to the general rule that one corporation shall not be liable for the acts of another corporation, when the two or more corporations may be considered a "single business enterprise" or one corporation may be considered an alter ego or an instrumentality of another corporation. See Pine Tree Assoc. v. Doctors' Assoc., Inc., 94-1193 (La.App. 1 Cir. 4/7/ 95); 654 So.2d 735, writ denied, 95-1608 (La.10/6/95); 661 So.2d 467; Green v. Champion Ins. Co., 577 So.2d 249 (La.App. 1 Cir.1991), writ denied, 580 So.2d 668 (La.1991); Adams v. Associates Corp. of North America, 390 So.2d 539 (La.App. 3 Cir.1980), writ denied, 396 So.2d 884 (La. 1981).
Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164 (La.1991) requires that the totality of the circumstances are to be considered in deciding when it is appropriate to pierce the corporate veil, as we have done in the instant case. However, the trial court's construction of the holding of *44 Riggins is too narrow in that Riggins concerns a plaintiff attempting to hold a shareholder responsible for corporate debts, not the situation we have of a parent corporation which is apparently a single business enterprise with its subsidiary.
Having found a genuine issue of material fact concerning the relationship of EGC to EGLC, this portion of the motion for summary judgment in favor of EGC is reversed. It is unnecessary to address whether EGC is entitled to summary judgment as a matter of law.

CONCLUSION
The summary judgments of the trial court regarding EGE, EGLP and EGLA are affirmed. The summary judgments in favor of EGLC and EGC are reversed. The appellees, EGLC and EGC are cast with the costs of the appeal.
AFFIRMED IN PART AND REVERSED IN PART.