| WOODARD, Judge.
Louisiana Onshore Properties, Inc. (LOPI) filed suit against Manti Resources, Inc. (Manti) on February 19, 1999, seeking injunctive and declaratory relief to force Manti to turn over the operation of certain oil wells that Manti operated under a joint-participation agreement with three other companies. LOPI claimed that it had been assigned the operator rights of one of the companies to the joint participation agreement. Manti filed a motion for summary judgment, contending that LOPI had not been validly assigned the rights of one of the participants, since none of the parties to the agreement had consented to the assignment in writing, as required by the agreement. On April 20, 1999, the trial court granted Manti’s motion for summary judgment. LOPI devolutively appeals. We reverse, as we find that the record contains genuine issues of material fact in dispute.
_yFACTS
On October 21,1997, Shell Onshore Ventures, Inc. and Shell Western E & P, Inc. (Shell), Manti, and Energy Investments Company entered into a contract entitled “Participation and 3-D Exploration Agreement” (the Agreement). Enron Capital and Trade Resources Corporation (Enron) did not execute the Agreement but has a present interest in it, which Energy Investments Company assigned to it. Generally, the Agreement provided that the parties agree to jointly acquire and develop mineral leases in various areas of Cal-casieu, Cameron, and Jefferson Davis Parishes. These leases were within a defined geographical area commonly referred to as an “Area of Mutual Interest” (AMI). The Agreement did not include LOPI.
The Agreement, in relevant part, stated:
This Agreement (the “Agreement”) shall constitute the contract in regard to the South Thornwell & Lakeside 3-D Project in Calcasieu, Cameron and Jefferson Davis Parishes, Louisiana, by and between Shell Onshore Ventures Inc. and Shell Western E & P Inc. (“Shell”), Enron Capital & Trade Resources, Corp. (“Enron”), Manti Re *990 sources, Inc. (“Manti”) and Energy Investments Company (“Energy”) (Shell, Enron, Manti and Energy sometimes referred to herein collectively as “the parties” or “Participant”, whether used in the singular or plural).
[[Image here]]
IX.
OPERATIONS
Shell shall serve as Operator (“Operator”) for each Prospect AMI in which it elects to participate. If Shell elects not to participate in a Prospect AMI, the party which proposes the Exploratory Well shall serve as Operator.
[[Image here]]
XVI.
SUBSEQUENT ASSIGNMENTS OF INTEREST
This Agreement and the rights and obligations of a Participant under this Agreement shall not be assignable by any Participant without the prior written consent of the other Participant except that Enron may assign interests in this Agreement to its Affiliates, subject to the following restrictions: a) neither Enron nor any Affiliate of Enron may assign this Agreement or any interest in this Agreement to any party which is not an Affiliate of Enron or to an Affiliate of Enron which is an operation oil and gas exploration and production company, b) all Enron 1¡Affiliates which acquire interests in this Agreement shall designate a single party to receive notices, billings, reports and all other correspondence hereunder, and to act in all respects for such Affiliates in dealings with Shell, such that Shell shall be fully entitled to deal with such agent in all respects, c) Shell shall not be required to account for the separate interests of any Enron Affiliates in this Agreement, and d) all Enron. Affiliates will make the same elections and other decisions under this Agreement. The restrictions on assignments of rights and obligations under this Agreement shall not restrict the right of any Participant to trade, sell, assign or otherwise transfer (collectively, a “Transfer”), interests in any Lease acquired hereunder provided that such Transfer is expressly subject to the terms of this Agreement and the applicable Operating Agreement.
(Emphasis added.)
From the above provisions, it is clear that pursuant to paragraph IX of the Agreement, when Shell elected to participate in a prospect, it had the right to be the operator of the lease. If it did not participate in the acquisition of a lease or otherwise declined to act as operator, the other parties were entitled to operate the lease. Second, the Agreement freely allowed the parties to assign or sell their lease interests in the AMI, but that right was expressly conditioned on the other parties’ “prior written consent.”
In 1998, Shell assigned its lease interests under the Agreement to LOPI. After receiving Shell’s lease interests, LOPI claimed it was entitled to exercise Shell’s operator rights and demanded that the other parties turn over all well operations to LOPI. When Manti, Energy Investments Company, and Enron refused to comply, on February 19, 1999, LOPI filed this lawsuit against Manti and other legal actions against the other parties to the Agreement. LOPI sought injunctive and declaratory relief to force Manti to turn over operation of wells which Manti operated under the Agreement.
Manti filed a motion for summary judgment, seeking dismissal of all of LOPI’s claims based on the fact that neither Enron nor Energy Investments consented in writing to Shell’s assignment of its operator rights under the Agreement to LOPI. Manti attached to its motions affidavits executed by representatives of Enron and Energy Investments that stated that neither company consented in writing to *991 Shell’s assigning its operator rights under the Agreement to LOPI. LOPI furnished affidavits rebutting Manti’s evidence.
|4In the discovery phase of this litigation prior to the hearing on Manti’s motion for summary judgment, Manti requested that LOPI produce the document reflecting Shell’s assignment of its operator rights under the Agreement to LOPI. LOPI did not produce such a document to Manti. Manti then supplemented its motion for summary judgment and served it, seeking dismissal of LOPI’s claims on the additional grounds that Shell had not executed a writing purporting to be an assignment of its operator rights to LOPI. One day prior to the hearing on the motion for summary judgment, LOPI served its opposition on Manti’s counsel and produced for the first time a “document” purporting to be effective on June 30, 1998, which had actually been created on April 15, 1998, as LOPI’s counsel conceded at the hearing. Manti moved that the document be stricken; however, the trial court permitted it to be admitted into evidence.
Following the introduction of the evidence on the motion for summary judgment, the trial court ruled from the bench that the Manti’s motion for summary judgment was granted. The trial court stated:
Manti Resources’ position is a valid position. I’ve read the contract itself that the parties entered into and certainly it’s clear that there must be a written assignment on who is going to be the operator and there is a distinction between the naming of the operator itself and of other rights there may be in the agreement itself, such as to the leases or so forth.
I don’t think that there is evidence that Louisiana Offshore has carried its burden of proof essentially that there was a valid assignment of their right to act as operator in this agreement. It wasn’t certainly no assignment was entered into by all of the parties.
And for the reasons that have been outlined in Manti’s or Manti’s [sic] Resources memorandum and the supporting affidavits, the court is going to grant the Motion for Summary Judgment.
Two days before signing this judgment on April 28, 1999, the trial court permitted Manti to file a motion to amend its answer, objecting to the document which LOPI had failed to produce in discovery but introduced at the summary judgment hearing. LOPI objected to the amended answer. Before hearing the matter, the court issued written reasons, on May 6, 1999, for its April 28 judgment. It, then, heard the motion on May 18, 1999, and on May 26, 1999, it declined to rescind its previous order permitting | KManti to file its amended answer. On June 11, 1999, the trial court signed the order for LOPI’s devolu-tive appeal.
LAW
Manti’s Motion to Strike
In connection with this appeal, Manti filed a motion to strike the “supplemental record” filed in the record of these proceedings at LOPI’s request and to strike portions of LOPI’s appeal brief.
On August 23, 1999, LOPI filed a pleading in the trial court, entitled “Plaintiffs Motion to Supplement Record on Appeal.” LOPI attached to this pleading a memorandum with attachments which LOPI had furnished to the trial court in connection with Manti’s motion to amend its answer. LOPI had sent the trial court a memorandum opposing Manti’s motion to amend but had not filed the memorandum with the clerk.
In Rambo v. Walker,[1] appellant’s counsel attached an exhibit to his appellate brief which had not been introduced before the trial court during the hearing on the motion for summary judgment. The court did not consider it on appeal.[2] Likewise, *992 since LOPI’s memorandum and attachments were never introduced into evidence in the motion for summary judgment, we decline to consider them in our de novo review of the record to determine whether the trial court erred in granting that judgment.
Manti alleges LOPI’s appellate brief contains references to the “supplemental” record discussed above. Manti requests that we strike those portions of the LOPI brief. Further, Manti points out that the LOPI brief cites documents attached to its verified petition filed in this suit. These attachments were not formally introduced into evidence for the motion for summary judgment, but they do comprise part of the record which was before the trial court for our de novo review., We will not strike these portions of the LOPI appellate brief which refer to documents that were not introduced into evidence at the motion for summary judgment hearing, as we note that all those preferences also appeared in its verified petition, which is part of the record we must consider.
The Motion for Summary Judgment
LOPI contends that the record contains genuine issues of material fact in dispute, precluding the trial court’s summary judgment; namely, regarding whether the parties to the Agreement had consented to Shell’s assignment of its operator interests to LOPI.
At the outset, we note that appellate courts review summary judgments de novo under the same criteria that governed the trial court’s consideration of whether or not summary judgment was appropriate.[3]
The law of summary judgment implemented in La.Code Civ.P. art. 966 was amended by Act No. 9 of the First Extraordinary Session of 1996. Further, in 1997, the legislature amended La. Code Civ.P. art. 966 to overturn, legislatively, jurisprudence inconsistent with Hayes v. Autin.[4] In Hayes, we found that the legislature overruled the presumption against the grant of summary judgment. We stated that the amendment “leveled the playing field” by removing the overriding presumption in favor of trial on the merits and by scrutinizing equally the supporting documents submitted by the mover and nonmover.
La.Code Civ.P. art. 966 now provides, in pertinent part, that “[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish those ends.” In other words, summary judgment is favored and shall be applied liberally.[5]
The amended provisions of La. Code Civ.P. art. 966 are procedural in nature and, thus, subject to retroactive, as well as prospective application.[6]
17Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[7]
La. Code Civ.P. art. 966, as amended, charges the moving party with the burden of proving that summary judgment is appropriate. In doing so, the moving party’s supporting documentation must be sufficient to establish that no gen *993 uine issue of material fact remains at stake. Such a burden is not unlike that assigned to the moving party before the amendments.[8] Once the mover makes a prima facie showing that there is no genuine issue as to a material fact and that summary judgment should be granted,'the burden shifts to the nonmover.
The amendments to La. Code Civ.P. art. 966 require the nonmover to rebut the showing made by the mover of the nonexistence of a genuine issue of material fact.[9] The nonmover must be able to sufficiently establish the existence of the essential elements of his claim on which he is to bear the burden of proving at trial.[10] Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The threshold question in reviewing a trial court’s grant of summary judgment is whether a genuine issue of material fact remains.[11] After which, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment.[12] Thus, summary judgment is appropriate when all relevant | ¿facts are brought before the court, they are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts.[13]
Facts are material if they determine the outcome of the legal dispute.[14] The determination of the materiality of a particular fact must be made in light of the relevant substantive law.[15]
The relevant substantive law that concerns us is the general effect of obligations and the interpretation of contracts. Contracts have the effect of the law between the parties.[16] An interpretation of a contract is the determination of the common intent of the parties.[17] When the words of a contract are clear and lead to no absurd consequences, no further interpretation may be made.[18] Words in a contract are to be given their generally prevailing meaning.[19] And provisions of a contract are to be interpreted in light of each other so that each is given the meaning suggested by the contract as a whole.[20]
The Agreement defines the term “Participant” to include all the parties to the Agreement, “whether used in the singular or the plural.” Shell, Enron, Manti, and Energy Investments Company are the parties to the Agreement. Article XVI of the contract clearly states that “[t]his Agreement and the rights and obligations of a Participant under this Agreement shall not be assignable by any Participant without the prior written consent of the other Participant.” The participants referred to were Manti and Energy Investments. Enron had no separate rights from those originally held by Energy In *994 vestments and was bound by the agreements and performance of Energy Investments before its assignment to Enron.
|gIn support of their motion for summary judgment, Manti submitted affidavits, signed by representatives of Energy Investments Company and Enron, which alleged that neither company granted written consent to Shell authorizing it to assign its operator rights to LOPI. In order to prevail at trial, LOPI has the burden of proving complete compliance with Article XVI’s provisions requiring all of the parties’ written content to the assignment of Shell’s operator rights. Once Manti submitted into evidence Energy Investments Company’s affidavit which disproved facts essential to LOPI’s claim under the Agreement, LOPI bore the burden to offer into evidence affidavits, or other evidence, that would create a genuine issue of material fact on these points. LOPI submitted Mr. James W. Carrington’s affidavit, which alleged that Energy Investments’ actions regarding LOPI establishes its consent to the assignment of the Agreement from Shell to LOPI. Mr. Carrington’s affidavit stated in part:
4. By its actions toward LOPI, Energy Investments has evidenced its consent to and acquiescence in the assignment of the Participation Agreement from Shell to LOPI. Specifically, during the latter half of 1998, Energy Investments sought my approval and consent on behalf of LOPI in connection with Energy Investments’ assignment of its interests in the Participation Agreement to Enron Capital & Trade Resources Corp. (“Enron”). Further recognizing the assignment from Shell to LOPI, Energy Investments sent correspondence to Meridian in October 1998 requesting that all future correspondence regarding any options or elections under the Participation Agreement be directed to Enron as Energy Investments’ assignee, rather than to Energy Investments.
LOPI’s countervailing affidavit created a genuine issue of material fact concerning Energy Investments’ consent to the assignment of Shell’s interest to LOPI. As Enron held no separate rights, other than those held by Energy Investment, its affidavit is not relevant to our decision.
Next for our consideration, LOPI filed into evidence an affidavit purporting to be an assignment of Shell’s operator interests to LOPI. Even though it was filed one day before the hearing, the trial court admitted it into evidence, and we have considered it. This is a material fact that LOPI must prove at trial. While LOPI did not produce such a document in discovery in response to Manti’s requests and the document was confected just before the summary judgment hearing, it nevertheless exists. The facts surrounding Shell’s alleged assignment of its operator rights to LOPI are matters to be | ^resolved at trial. There, the trier of fact may make the necessary credibility decision about the affidavit, which may not be done in a summary judgment proceeding.[21]
Last, we must consider the record regarding the question of Manti’s possible consent to the assignment of the Agreement from Shell to LOPI. The record contains LOPI’s verified petition that alleges that Manti consented to Shell’s assignment of its operator rights to LOPI by “its course of conduct” and by executing a CONSENT TO ASSIGN PARTICIPATION AND 3-D EXPLORATION AGREEMENT on April 15,1998 that stated in part “[b]y said transfer [ of a right of way] Shell Western E & P, Inc. is hereby released as to the responsibilities and obligations of Lessee as to the extent of the interest assigned and Louisiana Onshore Properties, Inc. shall become responsible for the obligations and responsibilities of Lessee as to the interest so received in any
*995 such assignment.” Manti denied this factual allegation in its answer. We find that the record on this point contains a genuine issue of material fact.
Thus, the trial court erred in granting summary judgment in favor of Manti, as some material facts are in dispute and will require credibility determinations by the trier of fact at trial on the merits.
LOPI makes other arguments in its brief, but because of our decision, we pre-termit further discussion of them.
CONCLUSION
The trial court erred in granting the motion for summary judgment for Manti because there are issues of material facts in dispute. Manti is cast with the costs of the appeal.
REVERSED AND REMANDED FOR TRIAL.

. 96-2538 (La.App. 1 Cir. 11/7/97); 704 So.2d 30.

. See also, Thibodeaux v. C.W. & W. Contractors, 96-675 (La.App. 3 Cir. 12/11/96); 685 So.2d 461.

. Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La. 1/16/98); 706 So.2d 979.

. 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691.

. Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.

. Kumpe v. State, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882.

. La.Code Civ.P. arl. 966(B).

. Townley, 702 So.2d 323.

. Townley, 702 So.2d 323.

. Id.

. Kumpe, 701 So.2d 498.

. Id.

. Id.

. Soileau, 702 So.2d 818.

. Id.

. La.Civ.Code art. 1983.

. La.Civ.Code art. 2045.

. La.Civ.Code art. 2046.

. La.Civ.Code art. 2047.

. La.Civ.Code art. 2050.

. See, Thibodeaux v. Ferrellgas, Inc., 98-862 (La.App. 3 Cir. 1/6/99); 741 So.2d 34, writ denied, 99-366 (La.3/26/99); 739 So.2d 797.