# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-659


# MARK DISHON; D/B/A CURB CREATIONS & CONSTRUCTION

# VERSUS

# ROSS M. PONTHIE, ET AL.


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 211,897
HONORABLE ALFRED A. MANSOUR, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***


# GLENN B. GREMILLION
# JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**


Nelson W. Wagar, III
Chopin, Wagar, Richard, & Kutcher, LLP
3850 N. Causeway Blvd.
Two Lakeway Center, Suite #900
Metairie, LA 70002
(504) 830-3838
Counsel for Plaintiff/Appellant:
    Mark Dishon
    d/b/a Curb Creations & Construction

**Jimmy R. Faircloth, Jr.**
**Faircloth, Vilar & Elliott, LLC**
**P.O. Box 12730**
**Alexandria, LA 71315-2730**
**(318) 442-9533**
**Counsel for Defendant/Appellee:**
     **Ross M. Ponthie**
     **RMP Development, Inc.**
     **RMP Rentals, LLC**

GREMILLION, Judge.

The plaintiff, Mark Dishon d/b/a Curb Creations & Construction, appeals a judgment granted in favor of the defendants, Ross Ponthie, individually, RMP Development, Inc. (Development), and RMP Rentals, L.L.C. (Rentals). Dishon performed concrete work for Development, but was never paid. He filed the instant suit seeking to recover the amount owed him from Ponthie or Rentals. The trial court denied Dishon's request finding that he failed to prove that Ponthie acted fraudulently or that he operated Development as an alter-ego of Rentals. Based on the following reasons, we affirm in part, reverse in part, render judgment, and remand for further proceedings.

## FACTS

Ponthie is in the business of building post offices for the United States Postal Service. Bids are solicited pursuant to plans, specifications, and the location selected by the USPS. Persons or entities bid on the location, after which, the winning bidder purchases the land and constructs the post office building. Once built, the winning bidder leases the building back to the USPC, but is responsible for maintaining the location. Ponthie and his wife personally own approximately twenty-five post office buildings throughout Louisiana. In 1997, on the advice of his accountant, Ponthie incorporated Rentals and Development in order to avoid personal liability. Following their creation, Rentals bids on the USPS projects. If it is the winning bidder, it purchases the property and obtains financing to build the post office, which it pays to Development to construct the building. Once built, Rentals

1

owns the building and leases it back to the USPS. Rentals owns approximately ten post offices in Louisiana and Texas.

Dishon was hired to perform concrete work on an Abita Springs post office by Development. He performed the work and then submitted an invoice for payment of $2,190.87. When Development failed to pay him, he filed a petition on open account in the Ninth Judicial District Court. He was granted summary judgment in this matter, but has been unable to collect the amount owed as Development is insolvent. He filed the instant suit against Ponthie, individually, Rentals, and Development alleging that Development is the alter ego of Ponthie and/or Rentals, such that he should be allowed to pierce the corporate veil and hold Rentals liable for the amount owed him. Dishon later amended his petition to allege basically that Rentals and Development were actually a single business entity.

Following a hearing on the merits, the trial court rendered written reasons finding in favor of Ponthie, Rentals, and Development, dismissing Dishon's claims with prejudice. The trial court held that Dishon failed to prove that Development acted fraudulently or that it was operated as an alter ego of Rentals. It stated that Rentals and Development were separate entities created by Ponthie to avoid personal liability in the maintenance of the post office buildings. Judgment was rendered in this matter on February 1, 2005. This appeal by Dishon followed.

## ISSUES

On appeal, Dishon argues that the trial court legally erred by failing to apply the "single business enterprise" doctrine to the facts of this matter to find that Rentals and Development were operated as a single business entity by Ponthie.

2

## PIERCING THE CORPORATE VEIL

It is well settled that a corporation is a distinct legal entity with the legal fiction of corporateness shielding its shareholders from liability for the corporation's debts. La.R.S. 12:93(B); *Riggins v. Dixie Shoring Co.*, 590 So.2d 1164 (La.1991). However, jurisprudence does allow for the piercing of the corporate veil in certain exceptional instances in order to hold shareholders liable for corporate debt. Two instances occur when shareholders, acting through the corporation, practice fraud or deceit on a third party and when they disregard corporate formalities to such an extent that the corporation and shareholders become alter egos of each other. *Id.*; *Amoco Production Co. v. Texaco, Inc.*, 02-240 (La.App. 3 Cir. 1/29/03), 838 So.2d 821, *writs denied*, 03-1102, 03-1104 (La. 6/6/03), 845 So.2d 1096. Five factors are considered by courts in deciding whether a corporation is the alter ego of a shareholder:

1) Commingling of corporate and shareholder funds;

2) Failure to follow statutory formalities for the incorporating and transacting of corporate affairs;

3) Undercapitalization;

4) Failure to maintain separate bank accounts and bookkeeping records; and

5) Failure to hold regular shareholder and director meetings.

*Riggins*, 590 So.2d 1164.

The following facts were elicited at the trial on the merits from Ponthie's testimony:

1) Ponthie is the sole shareholder and president of Development. He and his wife are both 50% shareholders of Rentals.

2) Ponthie makes all business decisions for both companies.

3

3)    Rentals builds and owns post office buildings, which it leases to the USPS. Development's only business is to actually build the buildings for Rentals. Rentals owns approximately ten post office buildings.

4)    Rentals obtains a twenty-year mortgage on the buildings based on the monthly rent it will realize from the USPS. It then utilizes the loan amount to pay Development to build the building.

5)    Ponthie and his wife personally guarantee the loans obtained to build the buildings.

6)    Rentals has an oral contract with Development to build the buildings for a fixed amount. Rentals never paid any amount exceeding the fixed amount even if the actual building cost exceeded that amount.

7)    Development has never sued Rentals for the money owed it as a result of increased building costs.

8)    Ponthie owns the office out of which both Rentals and Development work. Both companies use the same office furniture and the same phone numbers.

9)    Ponthie created both companies in 1997, and has followed all corporate formalities. He has minimally kept records of shareholder or board of director meetings. He was advised that it was senseless for him to have meetings with himself.

10)    Rentals and Development each have separate checking accounts and books. No funds were ever commingled between the two companies.

11)    Rentals tax returns for 1999, 2000, 2001, and 2002 reveal total assets of $6,057,676; $7,093,647; $8,422,589; and $7,990,723 respectively.

12)    Development has no money other than that obtained from Rentals pursuant to its building contract. Its 1999, 2000, 2001, and 2002 tax returns all report it having zero assets as the gross receipts equal the costs of goods sold. Ponthie testified that it has never made a profit. However, all four tax returns list $25,687 as an amount which is an asset and is due from Rental. Ponthie said that this was the amount he initially used to capitalize Rental and that it has already been paid back.

After hearing the evidence and reviewing these factors, the trial court held that Dishon failed to carry his burden of proof. As this is a finding of fact, we review the finding pursuant to the manifest error standard of review. Finding no error, we affirm the trial court's finding of no personal liability on the part of Ponthie. However, our review does not end here.

In *Green v. Champion Insurance Co.*, 577 So.2d 249 (La.App. 1 Cir.), *writ denied*, 580 So.2d 668 (La.1991), the first circuit recognized another instance in which a corporation's veil may be pierced to extend liability for another's debts to the corporation. This exception, called the "single business entity," occurs when a corporation is found to be the "alter ego, agent, tool or instrumentality of another corporation." *Id.* at 257. In devising this exception, the first circuit examined the structure of the corporation, rather than its form, utilizing eighteen factors to determine whether a group of entities constituted a single business entity:

1) corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;

2) common directors or officers;

3) unified administrative control of corporations whose business functions are similar or supplementary;

4) directors and officers of one corporation act independently in the interest of that corporation;

5) corporation financing another corporation;

6) inadequate capitalization ("thin incorporation");

7) corporation causing the incorporation of another affiliated corporation;

8) corporation paying the salaries and other expenses or losses of another corporation;

9)     receiving no business other than that given to it by its affiliated corporations;

10)    corporation using the property of another corporation as its own;

11)    noncompliance with corporate formalities;

12)    common employees;

13)    services rendered by the employees of one corporation on behalf of another corporation;

14)    common offices;

15)    centralized accounting;

16)    undocumented transfers of funds between corporations;

17)    unclear allocation of profits and losses between corporations; and

18)    excessive fragmentation of a single enterprise into separate corporations.

*Id.* at 257-58. In summing up, the first circuit stated that "[t]hese factors are similar to factors that have been used in Louisiana 'piercing the veil' cases. This list is illustrative and is not intended as an exhaustive list of relevant factors. No one factor is dispositive of the issue of the issue of 'single business enterprise.'" *Id.* at 258 (citations omitted).

We recognized the single business entity exception in *Haywood v. Louisiana Sugar Cane Products*, 96-1151 (La.App. 3 Cir. 3/5/97), 692 So.2d 524; *Thibodeaux v. Ferrellgas, Inc.*, 98-862 (La.App. 3 Cir. 1/6/99), 741 So.2d 34, *writ denied*, 99-0366 (La. 3/26/99), 739 So.2d 797; and *Amoco Production Co.*, 838 So.2d 821. Although none of these cases actually applied this exception in reaching their decisions, we find that it is applicable under the factual scenario presented here. As the trial court did not apply it, we will perform a de novo review on this issue.

6

After comparing the evidence with the factors set out in *Green*, we find that Ponthie operated Rentals and Development as a single business entity. He effectively owned and operated both companies, as his wife took no active role in the operation of Rentals. Rentals was operated as a holding company by Ponthie for the building, owning, and leasing of post office buildings to the USPS. Development's sole purpose was supplementary to this objective in that it built the post office buildings. Development performed its business with Rentals pursuant to an oral contract and for a set price. It had no other function and there was no evidence that it performed any work for any other entity. It further earned no other funds and its tax returns reveal that it never realized a profit as a result of its endeavors. Although Ponthie admitted that the building costs frequently exceeded Development's contract amount, he said that Development never attempted to collect the difference from Rentals. Finally, Rentals and Development were operated by Ponthie out of the same office and used the same phone numbers.

Although Ponthie complied with the corporate formalities and kept separate books for the companies, we find that the evidence is overwhelming that he operated the two companies as a single business entity. To hold otherwise would be patently unfair to the numerous contractors who performed work for Development only to remain unpaid, while Rentals reaped the benefits of the completed buildings through its leases with the USPS. Ponthie admitted that Development has been sued approximately ten times based on this exact scenario. Accordingly, we find that Ponthie has operated Development and Rentals as a single business entity; thus, we

7

find that Rentals is liable to Dishon for the $2,190.87 Development owes him, as well as the $1457 attorney's fees awarded in his suit on open account.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. It is further ordered, adjudged, and decreed that there be judgment in favor of Mark Dishon d/b/a Curb Creations & Construction awarding him $2,190.87 and attorney's fees. The matter is remanded to the trial court for a determination of the attorney's fees owed. The costs of this appeal are assessed to the defendants-appellees, RMP Development, Inc., and RMP Rentals, L.L.C.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**